**UNITED STATES DISCOURT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Kathy Lehman** *et al.*, : | |
| : | Case No. 4:10-CV-197 |
| **Plaintiffs** : | |
| : | (Chief Judge Kane) |
| v. : | (Magistrate Judge Arbuckle) |
| : | |
| **Diamond Development Co.**, *et al.*, : | |
| : | |
| **Defendants** : | |

**REPORT AND RECOMMENDATION ON MOTION**
**FOR HEARING TO EFFECT SETTLEMENT**

Before the Court is Plaintiff's Motion for Hearing to Effect Settlement (Doc. 73). For the reasons articulated below we recommend that this motion for a hearing be declared unnecessary, and a decision on the merits be issued in favor of the Plaintiff. The Defendants should be ordered to sign the Assignment of Rights Agreement (Doc. No. 74-5) and Release (Doc. No. 74-4).

**I.    Procedural History**

This case arises from a slip and fall accident on June 11, 2008. (Doc. No. 1, ¶ 9). The Court has Jurisdiction over this matter based upon diversity of citizenship under 28 U.S.C. §1332. (Doc. No. 1, ¶ 11). A complaint was filed on January 26, 2010 alleging that Diamond Development *et al*. (the landowners) failed numerous duties proximately causing Mrs. Lehman to fall and suffer serious permanent injuries. (Doc. No. 1, ¶ 17-25).

This case was ostensibly settled on the morning of trial, March 19, 2012 when an agreement was placed on the record (Doc. No. 70).

A Motion for Hearing to Effect Settlement was filed one week later. (Doc. No. 73). The settlement agreement has not been consummated to the satisfaction of the Plaintiff. The dispute was referred to the undersigned for settlement purposes (Doc. No. 77).

A conference via telephone was held before Magistrate Judge Arbuckle on May 24, 2012 with Mr. Chapman for the Plaintiffs, and Mr. Kopko for the Defendants, to assist the Court in understanding the issues presented by the Motion.

In lieu of a formal evidentiary hearing, affidavits were submitted on June 28, 2012 (Doc. No. 85). The parties can't agree on a resolution. Therefore this Report and Recommendation is submitted to the District Judge for decision.

## II. FINDINGS AND RECOMMENDATIONS

### A. Background

On the morning of trial (March 19, 2012) Plaintiff and Defendants reached a settlement agreement (hereinafter 'agreement'), and executed a writing memorializing the agreement that was then placed on the record (Doc. No. 70). The terms of the agreement require Defendants to pay to Plaintiff $25,000.00, and also assign "any rights they may have under the Philadelphia Indemnity Insurance

Company policy owned by Community Services Group." (Doc. No. 70). As a result of this agreement, the case was dismissed without prejudice. (Doc. No. 71).

Counsel for the Defendants was informed on Monday, March 19, 2012, <u>prior to settlement</u>, that a tentative agreement had been reached between Plaintiffs and Philadelphia Indemnity Insurance Company[1] (PIIC) in which Plaintiffs would receive $50,000.00 in exchange for a release to be signed by Defendants extinguishing Defendants' rights under the PIIC policy. (Doc. No. 85-6 at ¶ 6, Doc. No 74 at 2). Counsel for the Defendants claims he immediately perceived that PIIC had engaged in bad faith on the basis that PIIC denied coverage to the Defendants. (Doc. No. 85-6, ¶8). Defendants then proceeded to enter into a settlement with the Plaintiffs. (Doc. No. 85-6, ¶8). Defendants' counsel failed to disclose his belief that the "bad faith claim" was an un-assignable tort. (Doc. No. 85-6 ¶ 10-11).[2]

The parties discussed the necessity of the execution of a release in chambers before entering into the agreement (Doc. No. 70) in open court. (Doc. No. 73, ¶ 11). Counsel for the Defendants was aware that a release was essential to a resolution with PIIC. (Doc. No. 85-3, ¶ 12). Defendants agreed conceptually to

---

[1] PIIC was the property insurance carrier for the location of the accident. PIIC refused to defend Diamond and the Guaranas.

[2] Apparently Counsel for Defendants perceived that his client had a cause of action against PIIC for bad faith refusal to defend and is now reluctant to assign, "any rights they may have under the Philadelphia Indemnity Insurance Company policy owned by Community Services Group." (Doc. No. 70)

sign a release in favor of PIIC, but could neither agree nor object to the specific release until it was presented to him.  (Doc. No. 85-3, ¶14-17).

Following the settlement, Plaintiffs tendered two documents:

1) An Assignment of Rights Agreement (Doc. No. 73-5)[3]; and,

2) A Release (Doc. No. 73-4).[4]

Defendants have failed to execute either document.  (Doc. No. 73, ¶ 12-13).

**B.   Discussion**

Plaintiff has filed a Motion for Hearing to Effect Complete Settlement (Doc. No. 73).  We are called upon to decide if Defendants, who promised to both pay money and "…also assign any rights they may have under the Philadelphia Indemnity Insurance Company policy…," can now be required to sign a Release (Doc. No. 74, Ex. 4) that waives every conceivable claim against that Insurance Company, and more specifically, their right to seek bad faith damages against PIIC.

---

[3] The document states in relevant part, Defendants Diamond Development, et al assign "any and all rights they may have under the Philadelphia Indemnity Insurance policy owned by Community Services Group…by this agreement, Assignors *(Diamond Development)* do not intend to release or discharge their rights under the Philadelphia Indemnity Insurance policy, but rather to transfer any and all rights under the policy in favor of Assignees *(Lehman)*."  (Doc. No. 73, Ex. 5).

[4] The document states in relevant part, Philadelphia Indemnity Insurance Company agrees to fund a portion of the settlement in the sum of $50,000.00 in exchange for the execution by Defendant Diamond Development Co., et al. of this release which intends to "…forever release and discharge any and all claims against Philadelphia Indemnity Insurance Company which they may now have or in the future may have, whether now known or hereinafter ascertained, arising out of or in any manner connected with the *Lehman Litigation…*" (Doc. No. 73, Ex. 4).

In order to analyze this issue, the court must answer two questions. First, whether a bad faith claim under 42 Pa.C.S. § 8371 is assignable. Second, whether the Defendants did in fact assign this right as part of the agreement.

**1. The assignment of a bad faith claim under 42 Pa.C.S. § 8371 is consistent with both Pennsylvania law, and the law of this Circuit.**

The Defendants take the position that the agreement did not assign their right to pursue a bad faith claim under 42 Pa.C.S.§ 8371, and that they retain that right for themselves. This argument is based primarily upon *Feingold v. Liberty Mutual,* a case from the Eastern District of Pennsylvania. The *Feingold* case held that bad faith claims brought under 42 Pa.C.S.§ 8371 are not assignable due to their nature as an unliquidated tort claim. *See Feingold v. Liberty Mutual Group*, 2012 U.S. Dist. LEXIS 25273 (E.D. Pa., Feb. 28, 2012). However, the *Feingold* opinion has been criticized in the Middle District as being inconsistent with both Pennsylvania law, and the law of the Third Circuit. *See, Wolfe v. Allstate*, No. 4:10-CV-800, 2012 WL 2913724 (M.D.Pa., Jones, J. Decided July 12, 2012)[5]. The *Wolfe* case reinforces Plaintiff's contention that an insured's § 8731 claim of bad faith is assignable. *Id.*

---

[5] "Under Pennsylvania Law, as well as in the majority of American jurisdictions, an insured's claims against his or her insurer, in the nature of breach of contract, breach of fiduciary duty, and bad faith, as well as claims under section 8371 of the judicial code for punitive damages, counsel fees and interest, are assignable." *Wolfe v. Allstate*, No. 4:10-CV-800, 2012 WL 2913724 (M.D.Pa., Jones, J. Decided July 12, 2012)(*citing Brown v. Candelora*, 708 A.2d 104, 110 (Pa. Super. 1998).

In *Wolfe, Id.*, Judge Jones noted that the Third Circuit has recognized the assignment of rights to bad faith claims under 42 Pa.C.S.§ 8371. In a case involving a statute of limitations issue with the assignment of bad faith claims as part of a settlement agreement the Circuit Court held that "[u]nder Pennsylvania law an insured's claims against his insurer …under section 8371 for punitive damages,…are assignable." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 239 (3d Cir. 2003).

**2. Through the execution of the agreement, the Defendants did assign their right to pursue a bad faith claim under 42 Pa.C.S.§ 8371.**

The language of the settlement agreement required the Defendants to assign "any rights they may have under the Philadelphia Indemnity Insurance Company policy owned by Community Services Group." (Doc. No. 70).

Under Pennsylvania law, the enforceability of a settlement agreement is governed by the principles of contract law. *McDonnell v. Ford Motor Co.*, 643 A.2d 1102, 1105 (Pa. Super. 1994), *quoting Century Inn, Inc. v. Century Inn Realty, Inc.*, 516 A.2d 765, 767 (Pa. Super. 1986). In interpreting contracts, Pennsylvania courts look to the intent of the parties. *Stuart v. McChesney*, 444 A.2d 659 (Pa. 1982). The court seeks to ascertain the intent a reasonable person would apprehend in considering the behaviors of the parties. *Ingrassia Construction v. Walsh*, 486 A.2d 478 (Pa. Super. 1984).

Counsel for the Defendants argues that as he was aware of *Feingold* and therefore did not intend to assign Defendants right to a bad faith claim under 42 Pa.C.S.§ 8371 because he believed such claims to be unassignable.  However, the law requires an objective analysis of what a "reasonable person would apprehend" rather than a subjective analysis of Counsel's beliefs at the time the agreement was made.

After a review of the court transcript of the abbreviated March 19, 2012 proceeding where the settlement was placed on the record, and the affidavits submitted by counsel, the Court determines the following facts:

(1)  Defendants knew of Plaintiffs agreement with PIIC prior to the execution of the settlement agreement (Doc. No. 85-3, ¶12-13);

(2)   Defendants agreed in principle to the execution of a release absolving PIIC of liability thereby allowing Plaintiffs to collect a $50,000.00 settlement from PIIC (Doc. No. 85-3, ¶14-15); and,

(3)  Defendants gave no indication to Plaintiffs or the Court of their intent to retain any rights against PIIC.

With these facts, this Court concludes that the behavior of Defendants in the execution of the settlement agreement would lead a reasonable person to believe that the Defendants intended to assign "any rights they may have" under the PIIC

policy, and that this assignment included the right to a bad faith claim under 42 Pa.C.S. § 8371.

## C.   Conclusion and Recommendation

Based on the foregoing, the Court recommends that the Plaintiff's Motion for a Hearing be deemed unnecessary, and a decision on the merits be **GRANTED** in favor of the Plaintiffs.   It is recommended that the Defendants be ordered to sign the Agreement (Doc. No. 74-5), and Release (Doc. No. 74-4).

Respectfully submitted this 6th day of September, 2012.

>                   */s/William I. Arbuckle III*
>                   William I. Arbuckle III
>                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties are further placed on notice that pursuant to **F.R.C.P. 72 and Local Rule 72.3: Any party may object** to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) **within fourteen (14) days** after being served with a copy thereof.  **Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections** which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  **The briefing requirements set forth in Local Rule 72.2 shall apply**.  A judge shall make a de novo determination of these portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.